94 P.3d 659

Debbie **TAYLOR–RICE**, Individually and as Special Administrator of the Estate of Alexa Dawn Taylor, Plaintiffs–Appellants,

v.

**STATE** of Hawai'i, Defendant–Appellee,

and

Kenneth Richard Leigh; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Nonprofit" Corporations 1–10; and Roe Governmental Entities 1–10, Defendants.

Edward J. Blasie, Sr., Individually and as Special Administrator of the Estate of Darlene T.K. Blasie, Plaintiffs–Appellants,

v.

State of Hawai'i, Defendant–Appellee,

and

Kenneth Richard Leigh; John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; Roe "Nonprofit" Corporations 1–10; and Roe Governmental Entities 1–10, Defendants.

No. 24330.

Supreme Court of Hawai'i.

July 21, 2004.

Randall Valenciano and David Allan Feller, on the briefs, for plaintiffs-appellants.

Charles F. Fell and Marie C. Laderta, Deputy Attorneys General, on the briefs, for defendant-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Following a bench trial and initial appeal, plaintiff-appellant Debbie Taylor–Rice, individually and as special administrator of the estate of Alexa Dawn Taylor (Alexa), and plaintiff-appellant Edward J. Blasie, Sr. (Blasie), individually and as special administrator of the estate of Darlene T.K. Blasie (Darlene) [hereinafter, collectively, the plaintiffs], appeal from the May 8, 2001 findings of fact, conclusions of law, and order of the Circuit Court of the Fifth Circuit, the Honorable George M. Masuoka presiding, denying their motions to enforce judgment on appeal. Briefly stated, in the underlying case, defendant Kenneth Richard Leigh and defendant-appellee State of Hawai'i (the State) [hereinafter, collectively, the defendants] were found to be joint tortfeasors in an action arising from a single-car accident. In its judgment, the circuit court found that (1) the defendants were jointly and severally liable for damages, costs, and post-judgment interest and (2) Leigh was solely liable for pre-judgment interest. The circuit court's judgment was affirmed by this court in *Taylor–Rice v. State*, 91 Hawai'i 60, 64, 979 P.2d 1086, 1090 (1999) [hereinafter, *Taylor–Rice I* ].

The State thereafter tendered payment for the plaintiffs' damages, post-judgment interest on the damages computed at 4% per annum, costs, and interest on the costs computed at 4% per annum. Unsatisfied with this tender, the plaintiffs sought to additionally collect (1) pre-judgment interest on the damages apportioned to Leigh, computed at 10% per annum, (2) post-judgment interest on the damages apportioned to Leigh, computed at 10% per annum (rather than the 4% interest tendered by the State), and (3) interest on the plaintiffs' costs, computed at 10%

per annum (rather than 4%). Consequently, the plaintiffs filed motions to enforce the judgment on the initial appeal, which were denied.

In this appeal, the plaintiffs contend that, inasmuch as the State was found to be jointly and severally liable to the plaintiffs, the State must pay the "full value of the judgment," which includes 10% pre- and post-judgment interest on the damages apportioned to Leigh and 10% interest on the costs, pursuant to Hawai'i Revised Statutes (HRS) § 478–3 (1993).[1] With respect to the State's sovereign immunity from awards of interest, the plaintiffs allege that sovereign immunity must be construed according to the intent of the legislature and that "the legislature intended to waive any immunity regarding the State's payment of joint judgments[.]" For the following reasons, we affirm the circuit court's findings of fact, conclusions of law, and order denying the plaintiffs' motions to enforce the judgment on the initial appeal.

## I. BACKGROUND [2]

This action arose from a February 22, 1994 motor vehicle accident on Kaua'i. *Taylor–Rice I*, 91 Hawai'i at 65, 979 P.2d at 1091. The single-car accident occurred when Leigh drove his car off of Kūhiō Highway, striking the buried end of a guardrail maintained by the State and vaulting his vehicle into a utility pole. *Id.* at 64, 979 P.2d at 1090. The accident resulted in the death of two passengers, Alexa and Darlene, and caused serious injuries to a third passenger, Rudolphus Verdoorn. *Id.* Taylor–Rice, Blasie, Verdoorn, and Carol K. Blasie [3] brought separate actions against the State, Leigh, and others.[4] *Id.* Leigh defaulted, and the cases were subsequently consolidated and tried. *Id.*

Following a bench trial, the circuit court apportioned fault among the parties as fol-

---

1. HRS § 478–3 states: "Interest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit."

2. The facts of the underlying case are set forth in detail in *Taylor–Rice I*, 91 Hawai'i at 65, 979 P.2d at 1091.

3. Carol K. Blasie stipulated to a dismissal of her claims with prejudice. *Taylor–Rice I*, 91 Hawai'i at 64 n. 1, 979 P.2d at 1090 n. 1.

4. The plaintiffs also included claims against Linda Nusser (owner of the vehicle), GTE Hawaiian Telephone Corporation, and Citizens Utility Company; however, these claims were dismissed prior to trial. *Taylor–Rice I*, 91 Hawai'i at 64 n. 2, 979 P.2d at 1090 n. 2.

lows: (1) Leigh—65%; (2) the State—20%; and (3) Alexa, Darlene, and Verdoorn—15%. *Id.* at 69, 979 P.2d at 1095. On March 5, 1998, judgment was entered in favor of the plaintiffs. The judgment stated:

> Pursuant to the Findings of Fact, Conclusions of Law and Decision and Order, filed herein on January 23, 1998, Plaintiffs [Taylor–Rice and Blasie] have judgment against Defendants [Leigh and the State] **jointly and severally,** on all claims asserted in this action, as follows:
>
> 1. As to Plaintiff Debbie Taylor–Rice, Individually: General Damages in the amount of $136,000.00 ($160,000 less 15%).
>
> 2. As to Plaintiff Debbie Taylor–Rice, as Special Administrator of the Estate of Alexa Dawn Taylor: General Damages in the amount of $616,250.00 ($725,000.00 less 15%); Special Damages in the amount of $11,709.49 ($13,775.88 less 15%).
>
> 3. As to Plaintiff Edward J. Blasie, Sr.: General Damages in the amount of $119,000 ($140,000.00 less 15%).
>
> 4. As [t]o Plaintiff Edward Blasie, Sr., as Special Administrator of the Estate of Darlene T.K. Blasie: General Damages in the amount of $510,000.00 ($600,000.00 less 15%).
>
> . . . .
>
> 6. **As to all Plaintiffs against Defendants Kenneth Richard Leigh and State of Hawai'i: Costs of court, costs of suit, ... and post-judgment interest. Plaintiffs have judgment against Defendant Kenneth Richard Leigh for statutory pre-judgment interest from February 22, 1994, the date of the accident.**

(Bold emphases added.) (Underscored emphasis in original.) In sum, the State and Leigh were jointly and severally liable for the plaintiffs' damages, costs, and post-judgment interest, whereas Leigh was solely lia-

ble for pre-judgment interest on the plaintiffs' damages. On September 28, 1999, the circuit court ruled that the plaintiffs were entitled to costs in the amount of $9,507.03.

On June 30, 1999, upon appeal by the State, this court affirmed the judgment of the circuit court. *Taylor–Rice I,* 91 Hawai'i at 64, 979 P.2d at 1091. Specifically, this court held, *inter alia,* that: (1) the State was not immune from liability, *id.* at 77, 979 P.2d at 1103; and (2) the trial court did not err in concluding that the State was jointly and severally liable for the plaintiffs' damages. *Id.* at 79, 979 P.2d at 1105. This court entered judgment on the initial appeal on July 16, 1999.

By letter dated January 13, 2000, Deputy Attorney General Nelson Nabeta informed plaintiffs' counsel that the judgment had been submitted to the legislature and that an appropriation had been requested to satisfy the judgment. In its entirety, the letter stated:

> Please be advised that the final judgment against the State of Hawai'i was submitted to the legislature for review and appropriation of funding to satisfy judgment. Please be aware that our office believes that *the Chapter 662, Haw.Rev.Stat.*[5] *specifically applies to all final judgments paid by the State of Hawai'i.* Therefore, *the requested appropriation* submitted to this legislative session *was calculated at the rate of interest of 4%,* as provided under section 662–8 [ (1993)[6] ], Haw.Rev. Stat.

(Emphases added.)

In response, plaintiffs' counsel informed Nabeta that the plaintiffs "expect[ed] payment in full from the State of Hawai'i of any and all damages owed by Kenneth Leigh[,]" including (1) pre-judgment interest on Leigh's apportioned damages computed at "10% per annum" and (2) post-judgment interest on Leigh's apportioned damages computed at "10% per annum." The letter fur-

---

**5.** HRS chapter 662 is entitled the "State Tort Liability Act" (STLA).

**6.** HRS § 662–8 provides:
 **Interest.** On all final judgments rendered against the State in actions instituted under

this chapter, interest shall be computed at the rate of four per cent a year from the date of judgment up to, but not exceeding, thirty days after the date of approval of any appropriation act providing for payment of the judgment.

ther explained that "[p]ayment of anything less than this amount shall not be considered satisfaction of the judgment on appeal."

On July 25, 2000, the State tendered payments of (1) $805,129.06 to Taylor–Rice and (2) $654,810.51 to Blasie. These amounts included: (1) the plaintiffs' total damages; (2) post-judgment interest on the damages computed at 4% per annum; (3) the plaintiffs' total costs; and (4) interest on the costs computed at 4% per annum. The State did not pay pre-judgment interest on the plaintiffs' damages.

Unsatisfied with the State's tender, the plaintiffs filed motions for enforcement of judgment on December 15, 2000. Therein, the plaintiffs alleged that, "[a]s a joint tortfeasor, [the State] must pay Plaintiffs the sums that Plaintiffs would otherwise have recovered from Leigh[,]" which includes "pre-judgment and post-judgment interest at the rate of 10% per annum[ with respect] to Leigh's portion of the liability on the [j]udgment."

On May 8, 2001, after a hearing on the matter, the circuit court denied the plaintiffs' motions. The court reasoned as follows:

3. Under the State Tort Liability Act, the State of Hawai'i is not liable for pre-judgment interest, pursuant to [HRS § ] 662–2 [ (1993) [7]], and post judgment interest is limited to 4% after the entry of final judgment, pursuant to Section 662–8, Haw.Rev.Stat. For purposes of the instant motion[s], interest began to run upon the entry of the final judgment on appeal on July 16, 1999. *Littleton v. State*, 6 Haw.App. 70, 708 P.2d 829 (1985), aff'd 68 Haw. 220, 708 P.2d 824 (1985).

4. The limitations on liability of the State of Hawai'i contained in both Section 662–2 and 662–8, Haw.Rev.Stat., referenced in the immediately preceding paragraph, are limitations on the State of Hawai'i's waiver of its sovereign immunity. These limitations are clearly applicable to direct actions by claimants against the State of Hawai'i. . . .

5. Since the State Tort Liability Act was modeled after the Federal Tort Claims Act, cases and treatises interpreting the Federal Tort Claims Act are instructive as to the interpretation of the State Tort Liability Act. *Figueroa v. State of Hawai'i,* 61 Haw. 369, 384–85, 604 P.2d 1198 (1979). This court concludes that the instant lawsuit against the State of Hawai'i is a direct action brought under the State Tort Liability Act and is subject to the limitations contained in Sections 662–2 and 662–8, Haw.Rev.Stat.

On June 5, 2001, the plaintiffs timely appealed.

## II. *STANDARD OF REVIEW*

■■■ "The interpretation of a statute . . . is a question of law reviewable de novo."

Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative in-

7. HRS § 662–2 provides: "The State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

tent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider "the reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another."

*Barnett v. State,* 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (ellipses points in original) (internal citations and brackets omitted) (quoting *State v. Davia,* 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998) (quoting *Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327 (1998))), *reconsideration denied,* 91 Hawai'i 20, 979 P.2d 1046 (1999).

## III. *DISCUSSION*

The sole question before this court, as presented by the plaintiffs, is: "Whether Appellee State of Hawai'i, as a joint and several judgment debtor to [the plaintiffs] under [HRS § ] 663–10.9 [ (Supp.1999) [8]], must pay statutory interest on the full value of the judgment per [HRS] § 478–3, or may pay only limited interest under section 662–8?" The plaintiffs contend that, even though HRS § 662–8 provides that the State shall pay only 4% post-judgment interest on judgments rendered against it, inasmuch as the State was found to be jointly and severally liable to the plaintiffs, the State must pay the "full value of the judgment," including 10% pre- and post-judgment interest on the damages apportioned to Leigh. With respect to the State's sovereign immunity from awards of interest, the plaintiffs argue that sovereign immunity must be construed according to the intent of the legislature and that "the legisla-

ture intended to waive any immunity regarding the State's payment of joint judgments[.]"

The State contends that it is not obligated to pay pre-judgment interest on the damages attributable to Leigh and that it is required to pay only 4% post-judgment interest on the plaintiffs' entire damages. The State argues that it did not waive its sovereign immunity for awards of pre-judgment interest and that, with respect to post-judgment interest, it waived its immunity only to the extent that it may be liable for 4% per annum, and ·no more. The State notes that "courts may not *imply* a waiver of sovereign immunity based upon its construction of statute(s), its reading of the legislative history of statutes and/or the court's determination of legislative intent[ ]" and that "a general waiver of liability on an underlying action (e.g., contract or tort actions) cannot be construed to be an explicit waiver for litigation costs· such as prejudgment or post judgment interest." (Emphasis in original.) Finally, the State posits that HRS § 663–10.9, which authorizes the State to be found jointly and severally liable in this case, "do[es] not alter the limitations of the [STLA] regarding [p]rejudgment interest and postjudgment interest[.]" We agree with the State.

 Although the State was found to be jointly and severally liable for the plaintiffs' damages, costs, and post-judgment interest, it is well established that the State's liability is limited by its sovereign immunity, except where there has been a "clear relinquishment" of immunity and the State has consented to be sued. *Bush v. Watson,* 81 Hawai'i 474, 481, 918 P.2d 1130, 1137, *reconsideration denied,* 82 Hawai'i 156, 920 P.2d 370 (1996), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997)

---

8. HRS § 663–10.9 provides in pertinent part:

**Abolition of joint and several liability; exceptions.** Joint and several liability for joint tortfeasors as defined in section 663–11 is abolished except in the following circumstances:

(1) For the recovery of economic damages against joint tortfeasors in actions involving injury or death to persons;
....

(4) For recovery of noneconomic damages in motor vehicle accidents involving tort actions relating to the maintenance and design of highways including actions involving guardrails, utility poles, street and directional signs, and any other highway-related device upon a showing that the affected joint tortfeasor was given reasonable prior notice of a prior occurrence under similar circumstances to the occurrence upon which the tort claim is based....

("[T]he sovereign state is immune from suit for money damages, except where there has been a 'clear relinquishment' of immunity and the State has consented to be sued." (Citations omitted.)). This court has noted that the State has waived immunity to suit only to the extent as specified in HRS chapters 661 and 662.[9] *Waugh v. Univ. of Hawai'i*, 63 Haw. 117, 125, 621 P.2d 957, 965 (1980). In determining the extent to which the State has waived its immunity, this court has stated that "federal immunity principles … are 'relevant to our own principles of sovereign immunity.'" *Bush*, 81 Hawai'i at 481, 918 P.2d at 1137 (citation omitted); *see also Whittington v. State*, 72 Haw. 77, 78, 806 P.2d 957, 957 (1991) (noting that the STLA was modeled on the preceding and parallel federal act); *Figueroa v. State*, 61 Haw. 369, 383–84, 604 P.2d 1198, 1206 (1979) (stating that "the [STLA] was modeled after the Federal Tort Claims Act" (citation omitted)). Thus, we turn to federal cases for guidance in construing the applicable statutes pertaining to the State's sovereign immunity.

Federal courts have held that, when construing statutes regarding sovereign immunity, the following principles apply: (1) "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign[,]" *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citations omitted); (2) a waiver of sovereign immunity "must be unequivocally expressed in statutory text," *id.* (citation omitted); (3) "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text[,]" *id.;* (4) "[i]t is not [a court's] right to extend the waiver of sovereign immunity more broadly tha[n] has been directed by the Congress[,]" *United States v. Shaw*, 309 U.S. 495, 502, 60 S.Ct. 659, 84 L.Ed. 888 (1940); and (5) sovereign immunity "is not to be waived by policy arguments[,]" *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 663, 67 S.Ct. 601, 91 L.Ed. 577 (1947).

Specifically regarding interest on damages, federal courts have noted that "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *United States v. Aisenberg*, 358 F.3d 1327, 1345 (11th Cir.2004) (citations omitted); *see also United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1493 (9th Cir. 1995). Moreover,

> [t]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute … to permit the recovery of interest suffice where the intent is not translated into affirmative statutory … terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*Spawn v. W. Bank Westheimer*, 989 F.2d 830, 834 (5th Cir.) (citation omitted), *reh'g denied*, 989 F.2d 830 (1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1048, 127 L.Ed.2d 371 (1994). Additionally, "a general waiver of immunity to suit[ ]" does not constitute an express waiver of immunity from an award of interest. *Id.* at 833 (citation omitted); *see also Larson v. United States*, 274 F.3d 643, 645 (1st Cir.2001).

In the instant case, although the parties agree that, pursuant to HRS § 662–2, the State waived its sovereign immunity to be sued, generally, for the torts of its employees, the parties dispute whether the State clearly relinquished its immunity with respect to pre- and post-judgment interest on damages rendered against it.

## A. Pre–Judgment Interest

Initially, we note that the State was *not* found to be jointly and severally liable for pre-judgment interest on the plaintiffs' damages. To the contrary, the circuit court found that Leigh was solely liable "for statutory pre-judgment interest from February 22, 1994, the date of the accident." Therefore, based on the judgment itself, we hold that the circuit court did not err in conclud-

---

**9.** We note that, inasmuch as the instant case was a tort action against the State, the circuit court had jurisdiction over this case pursuant to HRS

chapter 662, the STLA. *See Waugh v. Univ. of Hawai'i*, 63 Haw. 117, 125, 621 P.2d 957, 965 (1980).

ing that the State need not pay pre-judgment interest on the damages rendered against it.

 Furthermore, the State contends that the plaintiffs waived their claims for pre-judgment interest insofar as they "did not appeal the judgment's omission of a prejudgment interest provision against the State[ ]" in the first appeal. The State is correct in asserting that, in the first appeal, the plaintiffs did not argue that the circuit court erred in failing to hold the State liable for pre-judgment interest. In fact, the plaintiffs did not cross-appeal from the judgment at all. This court has stated that "[i]t is elementary that where a party to a suit does not appeal from the decree entered therein, he or she must be held to acquiesce in it." *State ex rel. Price v. Magoon*, 75 Haw. 164, 188, 858 P.2d 712, 724 (internal brackets and citation omitted), *reconsideration denied*, 75 Haw. 580, 861 P.2d 735 (1993). Therefore, because the plaintiffs did not challenge the circuit court's failure to hold the State liable for pre-judgment interest, the plaintiffs "must be held to acquiesce in" the judgment and are precluded from now challenging it. *See id.*

 Regardless, HRS § 662–2 provides in clear and unambiguous language that "[t]he State ... shall not be liable for interest prior to judgment[.]" This constitutes a plain *reservation* of immunity with respect to pre-judgment interest on judgments rendered against the State. Inasmuch as no other statute unequivocally expresses a clear relinquishment of the State's immunity from awards of pre-judgment interest, we hold that the circuit court did not err in concluding that the State is immune from paying pre-judgment interest on the damages for which it is liable.

### B. *Post–Judgment Interest*

 With respect to post-judgment interest, HRS § 662–8 provides that, "[o]n all

final judgments rendered against the State in actions instituted under this chapter [ (662) [10] ], *interest shall be computed at the rate of four per cent a year* [.]" (Emphasis added.) Construing the statute's terms "strictly" and "in favor of the sovereign," it is clear that the State has waived its immunity with respect to post-judgment interest only to the extent that it must pay 4% per annum, and no more. Moreover, contrary to the plaintiffs' assertion that HRS § 478–3, *see supra* note 1, should apply to a portion of the damages for which the State is liable, the Intermediate Court of Appeals (ICA) has observed that HRS § 478–3 does not apply to the State:

> [I]t is a general principle of law that statutory laws of general application are not applicable to the State unless the legislature in the enactment of such laws made them explicitly applicable to the State. Here, *HRS § 478–[3] is a statute of general application and there is nothing making it explicitly applicable to the State.*[11]
> . . .
>
> [Furthermore], we find no reason in the law or the circumstances of this case to depart from the well-established rule that where there is an irreconcilable conflict between two statutes covering the same subject, the more specific, in this case § 662–8, should take precedence.

*Littleton*, 6 Haw.App. at 73, 708 P.2d at 831–32 (citations and internal quotation marks omitted) (emphasis added). As such, because "[i]t is not [a court's] right to extend the wavier of sovereign immunity more broadly tha[n] has been directed by the [legislature,]" *Shaw*, 309 U.S. at 502, 60 S.Ct. 659, this court must refrain from applying HRS § 478–3 to any damages for which the State is liable. Accordingly, we hold that the circuit court did not err in concluding that the State is immune from paying more than 4% per annum post-judgment interest on the plaintiffs' damages.

---

10. As previously noted, the circuit court had jurisdiction over this case pursuant to HRS chapter 662, the STLA. *See Waugh*, 63 Haw. at 125, 621 P.2d at 965.

11. In *Littleton v. State*, 6 Haw.App. 70, 73, 708 P.2d 829, 831–32, *aff'd*, 68 Haw. 220, 708 P.2d 824 (1985), the ICA was faced with determining whether HRS § 478–2 (Supp.1984) applied to

the State. In the instant case, this court is asked to determine whether HRS § 478–3 applies to the State. However, HRS § 478–2 (Supp.1984) was renumbered as HRS § 478–3 in 1986, and, therefore, the ICA's holding that HRS § 478–2 (Supp.1984) does not apply to the State is pertinent to the instant case.

■ Having concluded that the State is obligated to pay post-judgment interest at a rate of 4% per annum, this court must next determine whether the circuit court erred in concluding that "[post-judgment] interest began to run upon the entry of the final judgment on appeal on July 16, 1999." The plaintiffs argue that, with respect to the damages apportioned to Leigh, post-judgment interest began accruing on March 5, 1998, the date on which the circuit court entered its judgment. The State contends that post-judgment interest began accruing on July 16, 1999, the date on which this court entered its judgment on appeal in *Taylor–Rice I.*

HRS § 662–8 provides that, "[o]n all final judgments rendered against the State[,] . . . interest shall be computed . . . from the date of judgment up to, but not exceeding, thirty days after the date of approval of any appropriation act providing for payment of the judgment." More precisely, the ICA has held that "the legislature intended interest to run, under § 662–8, from the date when the judgment is conclusive, either *after the judgment on appeal* or after the time to appeal from the trial court judgment has expired." *Littleton,* 6 Haw.App. at 76, 708 P.2d at 833 (emphasis added). In the instant case, the State appealed from the circuit court's judgment, and, therefore, interest began to accrue "after the judgment on appeal," which was entered on July 16, 1999. Accordingly, we hold that the circuit court did not err in concluding that post-judgment interest on the plaintiffs' damages began to accrue on that date.

## C. *Costs*

■ On September 28, 1999, the circuit court ruled that the plaintiffs were entitled to costs in the amount of $9,507.03, for which the State and Leigh were jointly and severally liable. On July 25, 2000, the State paid the plaintiffs $9,821.09 for costs, including $314.06 in interest computed at 4% per annum. The plaintiffs, however, were unsatisfied with the State's tender and contended that the State should have paid interest on the costs at a rate of 10% per annum. The State maintained that it did not waive its sovereign immunity for awards of interest on costs in excess of 4% per annum.

■ As previously indicated, a waiver of sovereign immunity must be unequivocally expressed in statutory text, and legislative history cannot supply a waiver that does not appear clearly in any statutory text. *Lane,* 518 U.S. at 192, 116 S.Ct. 2092. In the instant case, the plaintiffs do not point to any statutory language evincing that the State unequivocally and clearly relinquished its sovereign immunity with respect to interest on costs in excess of 4% per annum, and we found none. As such, without a clear relinquishment of its immunity from awards for interest on costs in excess of 4% per annum, we hold that the circuit court did not err in concluding that the State is immune from paying more than 4% per annum interest on the plaintiffs' costs. *Bush,* 81 Hawai'i at 481, 918 P.2d at 1137.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's May 8, 2001 findings of fact, conclusions of law, and order denying the plaintiffs' motions to enforce judgment on the initial appeal.