**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000412
14-JAN-2025
07:57 AM
Dkt. 115 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

CHAUNTELLE ACOL, individually and as Personal Representative
of the ESTATE OF PETER J. KEMA, JR., deceased; ALLAN ACOL
and LINA ACOL, Plaintiff-Appellees,
v.
STATE OF HAWAIʻI, DEPARTMENT OF HUMAN SERVICES,
Defendant/Crossclaimant-Appellant; and PETER KEMA, SR.;
JAYLIN KEMA, Defendants/Crossclaim Defendants-Appellees,
and JOHN DOES 1-10, Defendants

NO. CAAP-21-0000412

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC181000052)

January 14, 2025

LEONARD, ACTING CHIEF JUDGE, McCULLEN, J., and
CIRCUIT COURT JUDGE ASHFORD, IN PLACE OF HIRAOKA, WADSWORTH,
NAKASONE, and GUIDRY, JJ., RECUSED

OPINION OF THE COURT BY LEONARD, ACTING CHIEF JUDGE

Years ago, many people in Hawaiʻi asked, where's Peter

Boy?  Underlying this appeal is the undisputed fact that Peter J.

Kema, Jr., widely known (and referred to herein) as **Peter Boy**, is

dead.  This case is a wrongful death action brought by Peter

Boy's estate and surviving siblings (the **Acols**).  The complaint alleges that Peter Boy's death in 1997 at age six was due to neglect and physical abuse inflicted by his parents and Defendant-Appellant State of Hawaii's (the **State's**) failure to timely investigate reports of abuse and to provide appropriate services.

In the proceedings below, the State filed a motion for summary judgment, which was denied, and the Acols filed a motion for partial summary judgment, which was granted.  The State appeals pursuant to the June 24, 2021 Order Granting [the State's] Motion for Leave to File Interlocutory Appeal and for Stay of Proceedings Pending Appeal (**Order Allowing Interlocutory Appeal**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]

On appeal, the State contends that the Circuit Court erred in its summary judgment rulings because:  (1) the Acols lack standing to bring an action under Hawaii's wrongful death statute, and even if the Acols have standing, the Acols' claims are untimely and precluded as a matter of law; and (2) the applicable statute of limitations runs from the decedent's death and the "discovery rule" does not apply in this case.  The State challenges the Circuit Court's April 26, 2021 Order Denying Defendant [State's] Motion for Summary Judgment [(**State's MSJ**)] (**Order Denying the State's MSJ**) and April 26, 2021 Order Granting Plaintiffs' Motion for Partial Summary Judgment as to the

---

[1]     The Honorable John M. Tonaki presided.

Affirmative Defense of Statute of Limitations [(**Acols' MPSJ**)] (**Order Granting the Acols' MPSJ**).

We hold that: (1) this case should not be dismissed at this time due to a lack of standing because the Acols may be able to establish their standing to bring wrongful death claims; (2) Hawaii Revised Statutes (**HRS**) § 662-4 (2016) sets forth the limit of the State's waiver of its sovereign immunity for tort claims, absent some other clear and unequivocally-expressed waiver of immunity in statutory text; (3) the statute of limitations applicable to the Acols' wrongful death claim against the State pursuant to HRS § 663-3 (2016) is within two years from the date of death of Peter Boy, unless (a) the Acols can establish, pursuant to HRS § 657-20 (2016), that any person who is liable for Peter Boy's wrongful death fraudulently concealed the existence of the Acols' cause of action, in which case (b) the Acols' action against the State accrued when the Acols discovered or should have discovered the existence of the cause of action against the State, and therefore, may be commenced within two years after the Acols discovered or should have discovered the existence of the cause of action against the State, as set forth in HRS § 657-20, as limited by HRS § 662-4. Accordingly, the Circuit Court did not err in denying the State's MSJ and erred in granting the Acols' MPSJ.

I.   BACKGROUND

   A.   Factual Background

   This is an interlocutory appeal from rulings on two summary judgment motions. Although not all facts underlying this

case are in dispute, many material facts remain open to determination by a trier-of-fact. This "factual" background is based on the submissions of the parties, and the facts of this case remain subject to establishment and challenge through admissible evidence and further argument.

Plaintiffs-Appellees Chauntelle Acol (**Chauntelle**), individually and as Personal Representative of the Estate of Peter J. Kema, Jr., deceased, Allan Acol (**Allan**), and Lina Acol (**Lina**) (collectively, the Acols) are the surviving siblings of Peter Boy.

Peter Boy was born in May of 1991 to Defendants-Appellees Peter Kema, Sr. (**Peter Sr.**) and Jaylin Kema (**Jaylin**) (the **Kemas**). Shortly after Peter Boy's birth, the State Department of Human Services (**DHS**) and Child Protective Services (**CPS**) removed Chauntelle and Allan from the Kema household and initiated an investigation due to injuries suggesting physical abuse by the Kemas. On June 26, 1991, Chauntelle and Allan were returned to the Kema household. A Child Protective Act proceeding was initiated in the Hilo Division of Family Court of the Third Circuit (**Family Court**) and the Family Court ordered a service plan and family supervision by CPS.

On August 11, 1991, three-month-old Peter Boy was taken to Hilo Hospital for treatment for a leg injury. X-rays revealed one-month old fractures in his upper arms and the left sixth, seventh, and eighth ribs, as well as more recent fractures in both legs and the left ankle. As a result of those injuries, Chauntelle, Allan, and Peter Boy were removed from the Kema

4

household and placed in foster care in August 1991. On September 13, 1991, Dr. Robert Di Mauro reviewed the x-rays and wrote in a letter to Michael Hess (**Hess**), the DHS worker in charge of the investigation: "The appearance and distribution of these fractures is characteristic of child abuse."

On November 14, 1991, a court-appointed psychologist filed his evaluation of the Kemas with the Family Court, warning that both parents suffered from significant psychological illness and that the chance of significant change in the parents' behavior was extremely poor. On November 16, 1991, Chauntelle, Allan, and Peter Boy were moved from temporary foster custody and placed with their maternal grandparents, James Acol and Yolanda Acol (**Acol Grandparents**).

On August 19, 1992, Hess wrote a memorandum to his supervisor, Claudia Wilcox, warning her that, "These children are at extreme risk if they are placed in the care of either parent." He urged her to move for permanent custody and termination of parental rights without delay.

On July 25, 1994, DHS returned Peter Boy to the custody of the Kemas. In approximately October of 1995, based on the report and recommendation of DHS, family supervision of Peter Boy and his siblings was revoked and the Family Court case was closed.

In January 1997, the Acol Grandparents reported to Constance Santana (**Santana**) at the Kona CPS office that they had seen Peter Boy with a severe injury to his arm. Santana called the Hilo CPS office supervisor Peggy Hilton (**Hilton**) about the

5

report.  Hilton asked Santana not to file the report as a "new intake," and advised her that she was closely monitoring the Peter Boy case.  Per Hilton's instructions, Santana logged the report under the existing case file.  Hilton did not indicate to Santana that the case had been closed in 1995.  There is no record of any action being taken by the DHS or CPS as a result of Santana's January 1997 report.

On April 4, 1997, Karen DeSoto, MSW, reported to DHS that a client of hers, a teenaged cousin to Peter Boy, had observed Peter Boy with a broken arm that she believed was caused by Peter Sr., who was also allegedly forcing Peter Boy to eat dog feces.  The report was logged as a new intake.  At the time, the protocol for addressing an intake report of child abuse was to assign the matter for investigation to a CPS worker within twenty-four hours of receipt.  However, the matter was not assigned until June 17, 1997, more than two months later.  By the time CPS worker Evelyn Au was assigned and initiated an investigation, Peter Boy had disappeared.  Peter Boy was never seen again.

According to DHS employee Sandy Vitousek (**Vitousek**), the reason for the delay was chronic short staffing that required investigations to be assigned on a priority basis.  Vitousek stated, "The information received did not warrant a high safety factor, given that there was no indication of actual harm, and at that time, there was no suspicion of the child being missing. The intake was accepted solely on the perceived concerns of a

[fifteen-year-old], coupled with a prior CPS history (Case closed in 1995)."

The Kemas claimed that Peter Boy had been taken to Oʻahu to stay with a distant relative named "Aunty Rose Makuakane."  The Kemas continued to assert this claim for the next nineteen years.  Meanwhile, local law enforcement investigated Peter Boy's disappearance, but were unable to obtain sufficient evidence to confirm Peter Boy's death or the circumstances of his disappearance.  The Kemas' Aunty Rose Makuakane story, together with two credible witnesses reporting seeing Peter Boy alive following his disappearance, complicated the investigation.  In 1998 and 1999, Hawaiʻi Police Department (**HPD**) investigators questioned the Acol siblings about the Kemas' abuse, particularly the abuse of Peter Boy.  Four-and-a-half-year-old Lina reported that she saw Peter Boy dead based on her recollection of an event she witnessed when she was approximately three-and-a-half years old.  Years later, in April 2001, HPD reclassified Peter Boy's disappearance from a missing person case to a murder investigation.  Lina reported her memories of seeing Peter Boy dead, her parents' attempts to resuscitate him, and her father driving with her to bury Peter Boy under a tree, to HPD and the media at ages seven, twelve, fourteen, twenty, and twenty-three.

In March and April of 2016, prosecutors were able to verify that both of the reported sightings of Peter Boy alive after his disappearance and the Aunty Rose Makuakane story were false.  On April 27, 2016, Jaylin and Peter Sr. were indicted for

the murder of Peter Boy.  Ricky Roy Damerville, a Hawaiʻi County deputy prosecutor assigned to prosecute the Kemas, explained in a declaration, *inter alia*, the difficulties with the case:

> There was no forensic evidence supporting the fact of death or the manner of death.  The only evidence that [Peter Boy] was deceased was the passage of time and the recorded statements of [Lina].
>
> . . . .
>
> The weakness [of the prosecution's case] was the inconsistent statements of a four and half year old Lina Acol, of average cognitive ability about something that she witnessed as a three and half year old and Lina's own uncertainty whether [Peter Boy] was deceased.

Jaylin and Peter Sr. pled guilty to reckless manslaughter for Peter Boy's death on December 1, 2016, and April 6, 2017, respectively.

On January 11, 2017, upon a petition, the Family Court appointed Stephen W. Lane (**Lane**) as Special Master to investigate the circumstance of Peter Boy's death and determine whether grounds existed for filing a tort claim on behalf of Peter Boy's estate.  On April 13, 2017, Lane filed a Special Master's Status Report wherein he stated, "I have concluded that there is substantial evidence of colorable claims against the [State] arising out of the care and treatment of [Peter Boy] and his siblings."  To support this conclusion, Lane cited to, *inter alia*, the two-month delay by CPS in investigating the April 4, 1997 report of abuse:

> By the time CPS reacted to the April 4 report in June of 1997, it was too late.  Peter Boy was dead.  It is probable that had CPS complied with their own standards and protocols and acted on this complaint as the law required, Peter Boy would be alive today.

On November 7, 2017, upon a petition to the Circuit Court of the Third Circuit (**Third Circuit Court**) for, *inter alia*,

a determination of death and adjudication of intestacy, the Third Circuit determined that Peter Boy was deceased.

B.    Procedural Background

On January 10, 2018, the Acols filed the Complaint in this case, asserting wrongful death claims on their own behalf and on behalf of Peter Boy's estate.  The Acols allege, *inter alia*, that the State, through its department and agency employees (including DHS and CPS employees), breached its duty to the Acols and Peter Boy by returning Peter Boy to the Kemas' household and by supporting the termination and closure of protective proceedings and parental supervision, despite knowledge and information about ongoing, severe physical abuse of Peter Boy by his parents.

On February 1, 2018, the State answered the Complaint, asserting, *inter alia*, that this action is barred by the applicable statute of limitations.

On March 2, 2021, the Circuit Court filed orders allowing the State's MSJ and the Acols' MPSJ, including exhibits to the motions, to be filed under seal.  Both motions were filed on March 3, 2021, and heard on April 1, 2021.  The Acols sought partial summary judgment as to the State's affirmative defense of statute of limitations.  They argued that the Complaint was timely because the Acols did not discover Peter Boy's death until Jaylin's confession in December 2016, and they discovered their colorable claims against the State when they received the Special Master's Status Report in April 2017.  The State argued that the Acols' claims were time barred by HRS § 663-3 because more than

two years had passed since Peter Boy's death when the Acols filed their Complaint.

On April 26, 2021, the Circuit Court entered the Order Denying the State's MSJ and the Order Granting the Acols' MPSJ. In both orders, the Circuit Court found as a matter of law that the Complaint was timely filed because:

1.  [The Acols'] cause of action did not accrue under [HRS] § 663-3 two-year limitations period until December 1, 2016 when Jaylin Kema allocuted in court as part of her guilty plea and admitted causing the death of Peter Boy Kema;

2.  From the time of Peter Boy's disappearance in 1997 until December 1, 2016, [Jaylin] and [Peter Sr.] fraudulently concealed the fact of Peter Boy's death, and [HRS] § 657-20 tolled the statute of limitations for six years following [Jaylin's] admission of guilt as to Peter Boy's death; and,

3.  For a large portion of the 19 years that Peter Boy was missing, the [Acols] were minors, either under the care of the Kemas themselves, or the Acol grandparents and could not be expected under these circumstances to bring an action within the two years after 1997 when Peter Boy disappeared and it is thought that he had died.  The reports or multiple recollections of [Lina] when she was 3 or 4 years old were inconsistent and it would be manifestly unfair to commence the statute of limitations period based upon this memory of Lina when the relevant government authorities chose not to act upon the same memory.

On June 24, 2021, the Circuit Court entered the Order Allowing Interlocutory Appeal.  On July 13, 2021, the State timely filed a Notice of Appeal.

II.  <u>POINTS OF ERROR</u>

The State raises two points of error, contending that the Circuit Court erred:  (1) in denying the State's MSJ; and (2) by applying the discovery rule to a wrongful death action and granting the Acols' MPSJ.[2]

---

[2]     The State's points of error are woefully noncompliant with Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4).  Such omissions may result in
(continued...)

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

We review orders granting or denying summary judgment *de novo*. <u>Nuuanu Valley Ass'n v. City & Cnty. of Honolulu</u>, 119 Hawaiʻi 90, 96, 194 P.3d 531, 537 (2008).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

<u>Id.</u> (citation omitted).

> Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.
>
> Our statutory construction is guided by the following well established principles:
>
> > our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
> >
> > When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
> >
> > In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
> >
> > [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

---

[2](...continued)
points of error being disregarded. However, in the interest of justice, we have exercised our discretion to address the merits of the appeal. <u>O'Connor v. Diocese of Honolulu</u>, 77 Hawaiʻi 383, 386 n.5, 885 P.2d 361, 364 n.5 (1994); <u>Sprague v. Cal. Pac. Bankers & Ins. Ltd.</u>, 102 Hawaiʻi 189, 196, 74 P.3d 12, 19 (2003).

Lingle v. Haw. Gov't Emps. Ass'n Local 152, 107 Hawaiʻi 178, 183, 111 P.3d 587, 592 (2005) (cleaned up).

IV.  DISCUSSION

The State maintains that the Circuit Court erred in its summary judgment rulings and the State is entitled to judgment as a matter of law because the Acols lack standing, and even if they have standing, their claims are barred by the applicable statute of limitations.

A.  Standing

The State argues that the Acols lack standing to bring a wrongful death action for the death of Peter Boy because they are not among the enumerated classes of persons who may recover under HRS § 663-3.  The State further argues that even though the issue of standing was not raised in the Circuit Court proceedings, standing is a matter of subject matter jurisdiction, and therefore the courts lack jurisdiction to rule in the Acols' favor.  This latter proposition was clarified, and firmly rejected, by the Hawaiʻi Supreme Court as follows:

> In Hawaiʻi state courts, standing is a prudential consideration regarding the "proper – and properly limited – role of courts in a democratic society" and is not an issue of subject matter jurisdiction, as it is in federal courts.

Tax Found. of Haw. v. State, 144 Hawaiʻi 175, 188, 439 P.3d 127, 140 (2019).

Hawaii's wrongful death statute provides:

> **§ 663-3  Death by wrongful act.**  (a)  When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons enumerated in subsection (b), may maintain an action against the person causing the death or against the person responsible for the death.  The action shall be maintained on behalf of the persons enumerated in subsection (b), except that the legal representative may

12

<u>recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial</u>.

(b)  In any action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including:

(1)  <u>Loss of society, companionship, comfort, consortium, or protection</u>;

(2)  Loss of marital care, attention, advice, or counsel;

(3)  Loss of care, attention, advice, or counsel of a reciprocal beneficiary as defined in chapter 572C;

(4)  Loss of filial care or attention; or

(5)  Loss of parental care, training, guidance, or education, suffered as a result of the death of the person;

by the surviving spouse, reciprocal beneficiary, children, father, mother, and <u>by any person wholly or partly dependent upon the deceased person</u>.  The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict or judgment, and any damages recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased.  Any action brought under this section shall be commenced within two years from the date of death of the injured person, except as otherwise provided.

HRS § 663-3 (emphasis added).

Pursuant to HRS § 663-3(a), in her capacity as the personal representative of Peter Boy's estate, Chauntelle has standing to bring a wrongful death claim under HRS § 663-3.  In their individual capacities, as Peter Boy's siblings, the Acols are not among the specifically enumerated persons (spouse, reciprocal beneficiary, child, mother, father) who have standing under HRS § 663-3, but they may nevertheless bring suit if they are able to establish that they were "wholly or partly dependent upon the deceased person," *i.e.*, Peter Boy.  <u>See</u> <u>id.</u>  The State argues that none of the Acols were wholly or partly dependent on six-year-old Peter Boy.

13

The supreme court has held that HRS § 663-3 is plain and unambiguous, and that under this statute, "the surviving spouse, children, mother, and father of the deceased <u>and</u> any person wholly or partly dependent upon the deceased may recover damages for pecuniary injuries <u>and</u> for the 'loss of love and affection' caused by the wrongful death of the deceased." <u>Lealaimatafao v. Woodward-Clyde Consultants</u>, 75 Haw. 544, 552, 867 P.2d 220, 224 (1994).  The court explained:

> The term "dependent" has been variously construed. But as employed in death acts it connotes the existence of necessitous want[.]
>
> Dependency may result from different causes.  It may result from the lack of physical necessities such as food, shelter and clothing.  <u>It may result from moral and social necessities such as education.</u>  Physical, moral and social necessities are not confined to the subjects mentioned. <u>Others are readily conceivable.</u>

<u>Id.</u> (quoting <u>Young v. Honolulu Const. & Draying Co.</u>, 34 Haw. 426, 442 (1938)) (emphasis added).  The court further clarified that claims are not limited to pecuniary injuries, but may also arise from a loss of love and affection.  <u>Id.</u> at 555, 867 P.2d at 226.

In most instances where dependency is disputed, "dependence that confers standing on [a person] to bring a wrongful-death action for the death generally presents a question of fact, which should be determined by the trier of fact.  The fact and degree of dependency on a decedent are matters for determination by a jury on proper evidence."  <u>See</u> 22A Am. Jur. 2d Death § 359.  Here, in part because the issue was raised for the first time on appeal, there are no factual findings on the issue of dependency.  In the Complaint, the Acols alleged that as a result of the wrongful death of Peter Boy, Plaintiffs sustained

14

"conscious pain and suffering; severe emotional distress and mental anguish; the loss of future enjoyment of life; the loss of society, companionship, comfort, consortium, and/or protection; and the loss of filial care and/or attention."

We cannot conclude as a matter of law that the Acols cannot establish that they were dependent upon Peter Boy for physical, moral, or social necessities; therefore, the Acols may be able to establish their standing to bring wrongful death claims under HRS § 663-3. We reject the State's argument that this case should be dismissed on this appeal due to lack of standing.

B.    Statute of Limitations

The State argues that the Acols' claims against the State are barred by the applicable statute of limitations, and therefore, the Circuit Court erred in denying the State's MSJ and granting the Acols' MPSJ.

We begin with the basic tenets of sovereign immunity.

> [I]t is well established that the State's liability is limited by its sovereign immunity, except where there has been a clear relinquishment of immunity and the State has consented to be sued.
>
> . . . .
>
> [W]hen construing statutes regarding sovereign immunity, the following principles apply: (1) a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign; (2) a waiver of sovereign immunity must be unequivocally expressed in statutory text; (3) a statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; (4) it is not a court's right to extend the waiver of sovereign immunity more broadly than has been directed by the [legislature]; and (5) sovereign immunity is not to be waived by policy arguments.

Taylor-Rice v. State, 105 Hawaiʻi 104, 109-10, 94 P.3d 659, 664-65 (2004) (cleaned up).

The State Tort Liability Act waives the State's immunity from money damages for torts as follows:

> **§ 662-2  Waiver and liability of State.**  The State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

HRS § 662-2 (2016).

The State Tort Liability Act also includes a statute of limitation, which states:

> **§ 662-4  Statute of limitations.**  A tort claim against the State <u>shall be forever barred unless action is begun within two years after the claim accrues</u>, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657-7.3 shall apply.

HRS § 662-4 (emphasis added).

This is a hard deadline – the limit of the State's waiver of its sovereign immunity for tort claims, absent some other clear and unequivocally-expressed waiver of immunity in statutory text.  See <u>Taylor-Rice</u>, 105 Hawai'i at 109-10, 94 P.3d at 664-65; <u>see</u> <u>also</u>, e.g., <u>Whittington v. State</u>, 72 Haw. 77, 79, 806 P.2d 957, 957-58 (1991) (holding that extensions for minors allowed under HRS § 657-13 (2016) are not applicable to tort actions against the State because the State Tort Liability Act does not contain an express minority tolling provision).  There is a single exception – involving HRS § 657-7.3 – that is not applicable here.

Thus, we necessarily consider when the tort claim accrues, *i.e.*, when the statute of limitations begins to run under HRS § 662-4, as well as other statutory language in and applicable to the wrongful death statute, HRS § 663-3.

> Our courts have interpreted the word "accrues" under HRS § 662-4 to mean that the statute does not begin to run "until the plaintiff knew or should have known of the defendant's negligence." Waugh v. University of Hawaii, 63 Haw. 117, 127, 621 P.2d 957, 966 (1980) (quotation marks and citation omitted). The Hawaiʻi Supreme Court later interpreted a similar statute of limitations, HRS § 657-7 (1993), to mean that a claim against the State "accrues" when the claimant "discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty [to the claimant]; and (3) the causal connection between the violation of the duty and the damage." Hays v. City and County of Honolulu, 81 Hawaiʻi 391, 396, 917 P.2d 718, 723 (1996) (citation omitted) (interpreting HRS § 657-7.3 (1993) and HRS § 657-7).

Anderson v. State, 88 Hawaiʻi 241, 247, 965 P.2d 783, 789 (App. 1998) (footnote omitted).

Accordingly, it appears that in general, pursuant to HRS § 662-4, the State has waived its immunity from suit for torts, including a wrongful death action, so long as the suit is brought within two years after the claim accrues; and, a claim accrues when the claimant has knowledge of (1) the decedent's death, (2) the defendant's wrongful conduct, and (3) the causal connection between the wrongful conduct and the death. We will return to this concept below.

But first we must also consider the State's argument that pursuant to Hawaii's wrongful death statute, HRS § 663-3, a wrongful death action must be commenced within two years of the decedent's death. As set forth above, HRS § 663-3 provides, in relevant part here:

> § 663-3  Death by wrongful act. (a) When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons enumerated in subsection (b), may maintain an action against the person causing the death or against the person responsible for the death[.]
>
> . . . .

17

> Any action brought under this section shall be commenced within two years from the date of death of the injured person, except as otherwise provided.

(Emphasis added).

The State points to the final sentence of HRS § 663-3 to argue that the limitations period for a wrongful death claim is strictly based on the date of decedent's death, subject only to tolling for infancy under the provisions of HRS § 657-13.[3]

As noted above, the supreme court held in Whittington that the tolling of the statute of limitations for minors allowed under HRS § 657-13 is not applicable to tort actions against the State, because the State Tort Liability Act does not contain an express minority tolling provision. 72 Haw. at 79, 806 P.2d at 957-58. "Actions brought under HRS Chapter 662, are not actions specified in Part I of Chapter 657, and accordingly, the

---

[3]     HRS § 657-13 provides:

> **§ 657-13  Infancy, insanity, imprisonment.**  If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, at the time the cause of action accrued, either:
>
>     (1)     Within the age of eighteen years;
>
>     (2)     Insane; or
>
>     (3)     Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life;
>
> such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

(Emphasis added).

        We note that the plain language of HRS § 657-13 recognizes that the condition of infancy, for example, does not determine when a cause of action accrues.  In other words, it recognizes that a cause of action may occur when a person is under an enumerated disability.  Rather, this statute tolls the running of the statute of limitations until after that disability is removed.

extension for minors allowed in HRS § 657-13 is not applicable to actions against the State brought under Chapter 662[.]" Id. at 79, 806 P.2d at 958 (emphasis added). The same principle is true for actions against the State brought under HRS chapter 663.[4]

Conversely, HRS § 657-20 specifically applies to HRS § 663-3, which provides for a tort action for wrongful death. As set forth above, the State has specifically waived its immunity for tort actions. HRS § 657-20 states:

> **§ 657-20 Extension by fraudulent concealment.** If <u>any person who is liable to any of the actions mentioned in</u> this part or <u>section 663-3</u>, <u>fraudulently conceals the existence of the cause of action</u> or the identity of any person who is liable for the claim from the knowledge of the person entitled to bring the action, the action may be commenced at any time <u>within six years</u> after the person who is entitled to bring the same <u>discovers or should have discovered</u>, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

(Emphasis added).

The Acols argue that HRS § 657-20 tolled the statute of limitations for six years following Jaylin's admission concerning Peter Boy's death. While an extension by fraudulent concealment is expressly made applicable to wrongful death claims under HRS § 663-3, there is no clear and unequivocally-expressed waiver in

_____

[4] We recognize that the supreme court has interpreted the 1972 amendment to HRS § 657-13 to permit the minority tolling provision in HRS § 657-13 to apply to wrongful death actions brought pursuant to HRS § 663-3. Hun v. Center Props., 63 Haw. 273, 281-82, 626 P.2d 182, 188 (1981). However, that case did not involve a wrongful death action against the State, and therefore, it is not dispositive of the issue here. Unlike HRS § 661-5 (2016) (the statute of limitations for claims against the State brought under Part I of HRS chapter 661), HRS § 662-4 does not provide for an additional period for "persons under legal disability" – such as infancy, insanity, imprisonment (see HRS § 657-13) – to commence a tort action against the State.

We further recognize that the one-year tolling provision in HRS § 661-5, for persons under disability, arguably could be applied to a claim brought pursuant to HRS § 663-3 because it is a "claim against the State founded upon any statute of the State" pursuant to HRS § 661-1(1) (2016). However, it is undisputed that the Acols did not commence this action within one year of reaching their respective ages of majority.

HRS § 657-20 or HRS § 663-3 of the absolute bar of tort claims against the State set forth in HRS § 662-4, *i.e.*, that a "tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues." Thus, we conclude HRS § 657-20 cannot be construed to toll the time period in which an action may be commenced against the State beyond the two-year period after the cause of action accrues.

HRS § 657-20 does, however, state parameters for the determination of when the cause of action accrues, *i.e.*, when the statute of limitations begins running on a wrongful death claim. Specifically, if <u>any person</u> who is liable for a wrongful death under HRS § 663-3 fraudulently conceals the existence of the cause of action, "<u>the action</u> may be commenced at any time within [the permissible number of] years after the person who is entitled to bring the same <u>discovers or should have discovered</u>, the existence of the cause of action . . ., although the action would otherwise be barred by the period of limitations." HRS § 657-20 (emphasis added). Contrary to the State's argument that the limitations period in HRS § 663-3 is fixed – running strictly from the decedent's date of death – we conclude that if the complainant(s) can establish that any person who is liable for a wrongful death under HRS § 663-3 fraudulently concealed the existence of the cause of action, then the discovery rule set forth in HRS § 657-20 applies, even though HRS § 663-3 itself does not contain accrual language.

Accordingly, we hold that (1) the statute of limitations applicable to the Acols' wrongful death claim against

the State pursuant to HRS § 663-3 (Death by wrongful act) is within two years from the date of death of Peter Boy, unless (2) the Acols can establish, pursuant to HRS § 657-20 (Extension by fraudulent concealment), that any person who is liable for Peter Boy's wrongful death fraudulently concealed the existence of the Acols' cause of action, in which case (3) the Acols' action against the State accrued when the Acols discovered or should have discovered the existence of the cause of action against the State, as set forth in HRS § 657-20, and therefore, may be commenced within two years after the Acols discovered or should have discovered the existence of the cause of action against the State, as set forth in HRS § 657-20, as limited by HRS § 662-4 (Statute of limitations for tort claims against the State).

C.    The Order Denying the State's MSJ

The State argues that the Circuit Court erred in denying the State's MSJ.  In accordance with the above, we reject the State's arguments that the State was entitled to summary judgment against the Acols because the Acols lack standing or because the Acols' claims were time-barred pursuant to HRS § 663-3 and no discovery rule could be applied to extend the statute of limitations more than two years after the date of Peter Boy's death.  Concerning fraudulent concealment, the State argues that (1) there is no allegation that the State participated in any act of fraudulent concealment, and (2) regardless of any fraudulent concealment of Peter Boy's death by the Kemas, "Lina always knew the true circumstances of the Kemas' conduct and the death of Peter Boy based on what she witnessed."

Regarding the State's first argument, HRS § 657-20 plainly states, in relevant part: "If **any person** who is liable to any of the actions mentioned in this part or section 663-3, fraudulently conceals the existence of the cause of action . . ., **the action** may be commenced at any time within [the applicable period] after the person who is entitled to bring the same discovers or should have discovered[] the existence of the cause of action." (Emphasis added). The plain and unambiguous language of HRS § 657-20 clearly extends the time to commence an action based on the fraudulent concealment of the existence of the cause of action by any person who is liable – it does not require the complainant to establish that all persons who are liable engaged in the fraudulent concealment of the existence of the cause of action.

Regarding the State's second argument, we conclude that there are genuine issues of material fact in dispute as to when the Acols discovered or should have discovered the existence of the wrongful death cause of action. We cannot conclude as a matter of law that Lina's varying and inconsistent recollections of what she saw when she was three years old, which conflicted with other accounts concerning whether Peter Boy was dead, constituted knowledge (even by Lina) of the existence of a wrongful death cause of action. The statute of limitations runs from when the cause of action was discovered or should have been discovered.

"[T]he moment at which a statute of limitations is triggered is ordinarily a question of fact." Norris v. Six Flags

Theme Parks, Inc., 102 Hawaiʻi 203, 206, 74 P.3d 26, 29 (2003) (citing Blair v. Ing, 95 Hawaiʻi 247, 267, 21 P.3d 452, 472 (2001)).  When a discovery rule applies, a cause of action accrues when the plaintiff discovers or should have discovered the wrongful act, the damage, and the causal connection between the former and the latter.  Hays, 81 Hawaiʻi at 396, 917 P.2d at 723.  A plaintiff's lack of knowledge regarding the legal duty upon which they may base a cause of action does not delay the start of the limitations period.  Id. at 398, 917 P.2d at 725.

> Concerning the issue whether the plaintiff, through the use of reasonable diligence, should have discovered the [wrongful] act, the damage, and the causal connection between the two, that issue is for the trier of fact.  It bears repeating, however, that even when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable man standard.

Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawaiʻi 232, 277, 167 P.3d 225, 270 (2007) (cleaned up).

On the record in this case, we cannot conclude there is no genuine issue of material fact regarding whether the Acols, through the use of reasonable diligence should have discovered the wrongful acts at issue here, the damage, and the causal connection between them more than two years prior to their commencement of this lawsuit.  Therefore, we conclude that the Circuit Court did not err in entering the Order Denying the State's MSJ.

D.   The Acols' MPSJ

The State further argues that the Acols' MPSJ was improperly granted.  As stated above, the Circuit Court found as a matter of law:

1.    [The Acols'] cause of action did not accrue under [HRS] § 663-3 two-year limitations period until December 1, 2016 when Jaylin Kema allocuted in court as part of her guilty plea and admitted causing the death of Peter Boy Kema;

2.    From the time of Peter Boy's disappearance in 1997 until December 1, 2016, [Jaylin] and [Peter Sr.] fraudulently concealed the fact of Peter Boy's death, and [HRS] § 657-20 tolled the statute of limitations for six years following [Jaylin's] admission of guilt as to Peter Boy's death; and,

3.    For a large portion of the 19 years that Peter Boy was missing, the [Acols] were minors, either under the care of the Kemas themselves, or the Acol grandparents and could not be expected under these circumstances to bring an action within the two years after 1997 when Peter Boy disappeared and it is thought that he had died.  The reports or multiple recollections of [Lina] when she was 3 or 4 years old were inconsistent and it would be manifestly unfair to commence the statute of limitations period based upon this memory of Lina when the relevant government authorities chose not to act upon the same memory.

Regarding the Circuit Court's first finding and conclusion, there was at least some evidence in the record that the Acols knew of the Kemas' wrongful acts that caused Peter Boy's death, that Peter Boy was dead, and a reasonable trier-of-fact could find that, through reasonable diligence, the Acols should have discovered the alleged wrongful acts of the State, as well as the causal connection between those acts and Peter Boy's death.

There also appear to be genuine issues of material fact concerning whether the Kemas fraudulently concealed their wrongful acts causing Peter Boy's death from the Acols, as well as Peter Boy's death, in light of, *inter alia,* Lina's attestations concerning what she witnessed as a young child, and the other reports of the extreme abuse suffered by Peter Boy.

The Circuit Court's third finding and conclusion in sum concludes that it would be "manifestly unfair" to bar the Acols'

24

claims on statute of limitations grounds based on Lina's memories when, *inter alia*, for many years the State failed to act upon Lina's accounts of Peter Boy's death.  However, as the supreme court has held, sovereign immunity cannot be waived based on policy arguments.  See, e.g., Taylor-Rice, 105 Hawaiʻi at 110, 94 P.3d at 665.  Nor can the statute of limitations for claims against the State be waived or modified on equitable grounds.  See Okutsu v. State, 153 Hawaiʻi 192, 197-99, 528 P.3d 956, 961-63 (App. 2023) (holding, *inter alia*, that HRS § 662-4 cannot be waived or tolled by the conduct of the executive branch).

Accordingly, we conclude that the Circuit Court erred in granting partial summary judgment in favor of the Acols and concluding as a matter of law that the Complaint was timely filed.

V.    CONCLUSION

For the reasons set forth above, the Circuit Court's April 26, 2021 Order Denying the State's MSJ is affirmed and the Circuit Court's April 26, 2021 Order Granting the Acols' MPSJ is vacated.  This case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

DATED:  Honolulu, Hawaiʻi, January 14, 2025.

On the briefs:

Caron M. Inagaki,
Kathy K. Higham, and
Skyler G. Cruz,
Deputy Attorneys General,
for Defendant-Appellant

Randall L.K.M. Rosenberg
Ryan M. Kaufman
(Rosenberg McKay Hoffman),
for Plaintiffs-Appellees

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ James H. Ashford
Circuit Court Judge